IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MEGAN M. BOONE PLAINTIFF

v. CIVIL ACTION NO.1:25-CV-108-SA-DAS

KROGER LIMITED PARTNERSHIP I DEFENDANT

ORDER AND MEMORANDUM OPINION

On July 1, 2025, Megan Boone initiated this litigation by filing her Complaint [1] against Kroger Limited Partnership I ("Kroger"). Boone asserts claims for retaliation, sex discrimination, and sexual harassment under Title VII of the Civil Rights Act of 1964. Kroger has filed a Motion for Summary Judgment [38], seeking summary judgment in its favor on all three claims. That Motion [38] is fully briefed and ripe for review.

*Relevant Background*

This lawsuit relates to Boone's previous employment with Kroger. Boone was hired to work at Kroger as a ClickList daytime associate in Starkville, Mississippi on July 15, 2018. In 2021, she was moved to a night retail clerk position. By the end of 2022 or beginning of 2023, Boone alleges she began being verbally harassed by Rodrick Rich, another night retail clerk. In her Complaint [1], Boone claims Rich made comments about her body — specifically her buttocks and/or breasts — at least once a week.

She contends that the harassment later escalated to physical harassment. In the first alleged physical encounter, Boone contends that Rich confronted her in one of the aisles, grabbed her left arm from behind, said, "you have no idea what I can do to you" then walked away. [42] at. p. 19, 64.[1] Boone and Rich had allegedly never spoken prior to this incident, but Boone stated that the

[1] Despite her Complaint [1] stating the incident happened in 2024, Boone clarified in her deposition that it occurred in mid-2023.

comment “felt sexual.” [42] at p. 20. Although Boone did not report the incident to Kroger management, she reported it to two of her co-workers, DJ Harris and Derek Hill.

Boone contends a second physical incident with Rich occurred on June 14, 2024. Specifically, she alleges that around 3:40 a.m., Rich sexually assaulted her. Boone testified that during her night shift, while she was working on aisle 8, Rich said he would pay her $50 to assist him with conditioning the aisle or bringing the product labels forward. Boone claims that in an attempt to play around with what she originally thought was a joke, she responded, “Shit, I like money…” [42] at p. 66. The facts up to this point are undisputed, but the parties have different recollections of the following.

Boone claims that Rich then walked over to her, placed his hands on her waist, stated “I’ll pay you more than that” and rubbed his hand against her breast for likely no more than thirty seconds. [42], Ex. 1 at p. 66, 71-72, 75. She testified that she then began inching herself towards the shelves and Rich “pressured” her against the shelf using his hand. She repeatedly said, “No. Stop” in a raised voice and Rich stepped back while apologizing for “getting carried away.” [42], Ex. 1 at p. 74-75. Rich’s version of these events is different. He claims that he walked over to Boone, hugged her, and that his hand inadvertently touched her breast. While two co-workers also claimed they saw Boone and Rich hug afterwards, Boone adamantly disputes the claim that they hugged.

Boone immediately clocked out of work, went to her car, and wrote down what had happened in a note on her phone. Later that day, around 8:30 p.m., Boone reported the alleged incident to her supervisor, Dennis Harris, and store manager, Dawn Lechner-Barr. Lechner-Barr responded that she would “address the situation” but Boone claims she never heard anything

further and to her knowledge, nothing was done to address the matter. Boone supposedly recorded this conversation.

On or about July 10, 2024, after a month or so of not hearing anything about the investigation, Boone called her union and learned they had never been informed about the reported harassment. During that call, she filed a complaint against Rich. Roughly a month after Boone reported the incident to the union, a union representative met with Lechner-Barr. Lechner-Barr asserts that prior to the meeting, she had tried to call Boone multiple times and that Boone would not answer. Subsequently, the union dismissed Boone's complaint. Boone contests Lechner-Barr's assertion that she tried to contact her, alleging that she has no records of any phone calls or emails from Lechner-Barr.

Boone had no personal or professional issues with Rich following this incident; however, it is unclear as to the extent of their interactions as they remained working on the same shift together but were supposedly separated. Boone has been diagnosed with anxiety since 2015 but claims her symptoms were exacerbated from Rich's alleged sexual harassment, suffering frequent panic attacks that led to blackouts.

A few months later, on October 27, 2024, Assistant Store Manager, Robert Gatliff, confronted Boone in what she described as an "aggressive manner" about clocking in two hours early for her overnight shift. This caused Boone to suffer a panic attack, and she requested that she be allowed to leave work because of it. Gatliff then told Derek Hill to tell Boone that Lechner-Barr said that if Boone left without completing her shift, she would be terminated. Boone contends that at least part of this conversation was recorded. Boone stated she was unable to complete her shift and resigned on the morning of October 28, 2024. Her resignation letter stated she quit "due to mental health complications." [42] at p. 199.

This lawsuit eventually followed. Although Boone was not terminated, she contends that she was constructively discharged and that Kroger's employment decision as to her was because of her gender and/or in retaliation for her report of sexual harassment. She also contends that she was subjected to a hostile work environment. As noted previously, Kroger seeks summary judgment in its favor on all of her claims.

*Summary Judgment Standard*

Summary judgment is appropriate when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist

arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As noted above, Boone asserts three separate claims against Kroger. The Court will address them in turn.

*I. Sex Discrimination Claim*

Since Boone does not claim to have direct evidence of the alleged sex discrimination claim, she carries the initial burden of establishing a *prima facie* case of discrimination, which she can only do by satisfying the four-prong test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the *McDonnell Douglas* framework, Boone must show: (1) she is a member of a protected class, (2) she was qualified to be a night retail clerk, (3) she suffered an adverse employment action, and (4) others outside the protected class were treated more favorably. *Id*. at 802, 93 S. Ct. 1817.

Once Boone establishes her *prima facie* case, Kroger must articulate a legitimate nondiscriminatory reason for its actions. *Id*. If Kroger does so, the burden shifts back to Boone to rebut Kroger's explanation either by showing that the reason given is pretext for unlawful discrimination, or the proffered reason, while true, is only one of the reasons for its conduct, and another motivating factor is Boone's protected characteristic. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007).

Kroger contends that Boone cannot establish the last three elements of a *prima facie* case. The Court first turns to the third element — whether there was an adverse employment action. Kroger argues that Boone did not suffer an adverse employment action because she chose to

voluntarily resign after being told she needed to complete her shift or she would be terminated. However, a resignation can constitute an adverse employment action where that resignation amounts to a constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "In determining whether an employer's actions constitute a constructive discharge we ask whether 'working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338 (5th Cir. 2014) (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008)). In evaluating whether a reasonable employee would feel compelled to resign, a court must consider multiple factors, including whether the plaintiff experienced any (1) demotions; (2) reductions in salary or job responsibilities; (3) job reassignments to menial or degrading work; (4) reassignment to a younger supervisor; (5) badgering, harassment, or humiliation calculated to encourage resignation; or (6) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id*.

Here, it is undisputed that Boone did not suffer any demotions, reductions in salary or job responsibilities, job reassignments to menial or degrading work or to a younger supervisor, nor did she receive any offers of early retirement or less favorable employment terms — leaving only the fifth factor, which concerns whether she suffered badgering, harassment, or humiliation calculated to encourage resignation. To support her position, Boone cites her requests to move off the overnight shift that she shared with Rich, the fact that she was required to produce documentation for absences, hostility from Gatliff, and her increased anxiety. While Boone makes these arguments in her Memorandum [43], her deposition testimony largely undercuts those assertions. The Court will walk through each of these arguments.

Boone first submits that she was constructively discharged because she was forced to work "alongside her alleged assailant for four months." [43] at p. 11. However, in her deposition, Boone testified that she was not subjected to any further instances of sexual harassment by Rich after the June 14, 2024, incident because they were separated at work:

Q: And so, between June of 2024 and October of 2024, did you have any issues with Rodrick Rich?

A: With him personally, no.

Q: What about professionally?

A: No. He mostly stayed away from me.

Q: Okay. So hardly no interactions?

A: Correct.

Q: You-all were functionally separated?

A: Correct.

…

Q: And I believe your testimony was that from June 14th to October 27 when you resigned, there were no issues between you and Rodrick Rich, correct?

A: Correct, because we were separated.

…

Q: But it is true that nothing happened between you and Rodrick Rich after you reported [the sexual harassment], correct?

A: We were separated. That did not help my anxiety.

Q: But it did alleviate any issues of any alleged sexual assault or harassment between you two, correct?

A: Correct.

…

Q: As we talked about, Rodrick and you didn't even have any interactions after this, correct?

A: We still had to go to the same back room, and we would pass each other. Yes.

[42], Ex. 1 at p.78, 91, 98-99, 206.

Thus, Boone testified repeatedly that she and Rich were separated after the June 2024 incident. This weighs against any contention that Kroger subjected Boone to harassment calculated to encourage her resignation. To establish constructive discharge, the plaintiff "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir. 1992). Taking as true Boone's testimony that she and Rich were separated at work, her claim that working alongside Rich contributed to her constructive discharge effectively fails because even if they had to pass one another or go to the same back room, she admitted that she was not subjected to further harassment, badgering, or humiliation. While the Court agrees that continued work with an alleged assailant could cause a reasonable employee to feel compelled to resign under certain circumstances, the reality is that Boone's testimony does not support that conclusion here.

To further support her constructive discharge theory, Boone claims that her requests to transfer shifts were denied. Yet, she fails to indicate how these denials could be considered relevant under the remaining constructive discharge factor. Again, Boone admitted that she was not subjected to harassment or badgering by remaining on her shift with Rich because she was apparently separated from him at work, despite the allegations made in her Complaint [1] and Memorandum [43].

Boone repeats this pattern in regard to her claim that she was required to produce documentation for her absences that her male co-workers were not. Although making this

conclusory assertion, Boone testified in her deposition that she had no proof that she was the only person who was ever asked to supply some sort of doctor's note.[2]

Lastly, Boone points to her panic attacks and increased anxiety. The Court does not take the psychological effects of sexual harassment lightly. However, Boone's emotional state does not support the remaining factor of constructive discharge. While Boone was instructed by Kroger management to either continue her shift despite her panic attack or be terminated, this is not a disability discrimination cause of action nor is it evidence of badgering, harassment, or humiliation calculated to encourage her resignation.

Boone has failed to meet her burden here. Indeed, the Fifth Circuit has held conduct far more egregious than the conduct complained of in this matter was insufficient to establish constructive discharge. *See, e.g., Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991-92 (5th Cir. 2008) (holding that employee's assertions that she was not provided the same career development opportunities, her complaints of discrimination were not investigated, her supervisor exhibited anger and violence, and that she was excluded from prestigious retreats were not sufficient to support a claim of constructive discharge); *Harvill v. Westward Commc'ns, L.L.C* ., 433 F.3d 428, 440 (5th Cir. 2005) (holding that employee's assertions that she was treated "rudely and with general hatefulness," that a man she did not know began taking pictures of her, that a meritless racial harassment charge was brought against her, and that a new supervisor was overheard stating that he would receive a bonus if he forced her to quit were not sufficient to demonstrate harassment so intolerable that a reasonable employee would feel compelled to resign).

[2] Specifically, when questioned about any proof she had on this point, Boone testified: "I have no proof. Correct." [42], Ex. 1 at p. 116-17.

As previously noted, the relevant test is whether a reasonable person in the plaintiff's shoes would have felt compelled to resign. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004). This is an objective, not subjective, test. *Id*. It is undisputed that Boone was not demoted, did not have a reduction in salary or job responsibilities, was not reassigned to menial work or to a younger supervisor, nor was she offered early retirement or continued employment on less favorable terms. And her own deposition testimony undercuts her other arguments in favor of constructive discharge. Stated concisely, she has not come forward with competent summary judgment evidence to establish that she was subjected to "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Perret*, 770 F.3d at 349.

Alternatively, even if these facts amounted to a constructive discharge, Boone would fail as to the fourth *prima facie* element because she never alleges that she was replaced nor does she point to any similarly situated co-worker outside of her protected class that was treated more favorably.

Under the "similarly situated" route, a plaintiff must identify at least one co-worker outside of [her] protected class who was treated more favorably "under nearly identical circumstances." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). This co-worker, known as the comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share [] the same supervisor" or have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant. *Id*.

Of critical importance on this point is the fact that Boone indisputably had a history of attendance issues during her employment at Kroger.[3] Boone does not point to any similarly situated

[3] On April 1, 2024, Boone was written up for constructive advice on excessive absenteeism. Shortly thereafter, she was placed on probation until October 1, 2024, for chronic attendance issues. Kroger issued

co-worker outside of her protected class who was treated more favorably. Rather, she makes broad generalizations that she, the only woman on the team, was the only one required to bring a doctor's note for absences. She makes some reference to one male employee, Charlie Blackshire, not being required to provide a doctor's note for his absences. But, in her deposition, she admitted that she has no knowledge as to whether Blackshire had attendance issues or had ever been subjected to any disciplinary actions:

> Q: And so, do you think that it is unreasonable for the assistant store leader to ask for a doctor's note if you were going to be absent?
>
> A: It's unreasonable to only ask the one woman on the team. Yes.
>
> Q: Well, how do you know that he didn't ask the men on the team?
>
> A: They told me.
>
> Q: Okay. And who told you specifically?
>
> A: Charlie Blackshire
>
> Q: Anybody else?
>
> A: I did not ask anyone else about it.
>
> …
>
> Q: Only one person said that they never asked him for a doctor's note. And you've never seen his personnel file, correct?
>
> A: Correct.
>
> Q: You don't know about whether or not he's been written up for attendance issues?
>
> A: I don't know.
>
> …

Boone 17 total instances of discipline during her tenure, most of which were for absenteeism. [38], Ex. 22 at p. 2; [42], Ex. 1 at p. 185.

Q: I said, can you identify any male employees on the night shift who had attendance issues like you had? So not just one here or there.

A: I don't know their records.

[42], Ex. 1 at p. 112-14.

It is clear from her testimony that Boone simply has no knowledge as to Blackshire's employment history. Despite her deposition testimony clearly indicating a lack of any knowledge on that point, she has not come forward with any other evidence to substantiate that point. Consequently, the Court has nothing before it to establish that Boone and Blackshire are similarly situated. Her mere conclusory allegation is insufficient to preclude summary judgment. *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 518 (5th Cir. 2010) (citing *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996)).[4]

Ultimately, Boone has failed to come forward with competent evidence to support a *prima facie* case of sex discrimination. Summary judgment is therefore granted on that claim. It is dismissed.

*II. Retaliation Claim*

Boone also asserts a claim for Title VII retaliation, alleging that Kroger retaliated against her for making a complaint of sexual harassment. To support this claim, Boone relies on the denials of her requests to be assigned the day shift or a different department and that she was required to provide medical documentation for her absences. However, she argues that the ultimate retaliation occurred via constructive discharge on the morning of October 28, 2024, when she asked to leave work early due to a panic attack and was told she must either finish her shift or be terminated.

[4] Additionally, the Court points out that Boone failed to address the fourth *prima facie* element in her Response Memorandum [43]. While it does not resolve the issue on that basis, the Court finds it noteworthy.

Unable to complete her shift and believing it was a better alternative to termination, Boone resigned citing mental health complications.

Title VII's anti-retaliation provision provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

A plaintiff's "ultimate burden…is to prove that but for the employer's improper retaliatory motive, the allegedly retaliatory employment action would not have occurred." *Liedtke v. City of Austin*, 185 F.4th 560, 585 (5th Cir. 2026). In a circumstantial evidence case such as this one, a plaintiff must prove her claim via the *McDonnell Douglas* burden-shifting framework. Under that framework, Boone must first show that: (1) she engaged in protected activity under Title VII; (2) Kroger took adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id*. If the plaintiff establishes a *prima facie* case, the burden "then shifts to the employer to articulate a legitimate, ... nonretaliatory reason for its employment action." *Id*. Insofar as the employer satisfies that requirement, the plaintiff must prove that the employer's proffered reason is not true, but instead pretext for the real, retaliatory purpose. *Id*.

The fact that Boone engaged in protected activity by making a complaint of sexual harassment is not disputed by the parties, leaving only the issues of an adverse employment action and a causal connection in the *prima facie* case.

An adverse employment action for purposes of retaliation claims, as opposed to discrimination claims, is a "materially adverse action." *Id*. Any employment action that "might

have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'" is materially adverse. *Id*. at 585-86 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). Kroger argues that Boone cannot establish a materially adverse employment action because she voluntarily resigned after being given the choice to finish her scheduled shift or be terminated. However, the Fifth Circuit has held, as a matter of law, that an employee's constructive discharge constitutes a "materially adverse" employment action. *Id.* at 587. Thus, Boone could meet this burden by establishing that she was constructively discharged.

The Court has previously addressed at length Boone's contention that she was constructively discharged. It sees no need to simply repeat that analysis in full. Suffice it to say, none of the constructive discharge factors weigh in Boone's favor. She admittedly did not receive a demotion, pay cut, reduction in responsibilities, reassignment to menial work or a younger supervisor or offers of early retirement. And she otherwise has not come forward with evidence to support the remaining factor that she suffered "badgering, harassment, or humiliation" by Kroger such that the "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *Id*. at 581.

Even assuming that Boone could establish the existence of a materially adverse employment action, her claim would fail for lack of causation. The Fifth Circuit has recently explained that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)). "However, the but-for standard does not apply at the *prima facie* case stage. Instead, 'at the *prima facie* case [stage], a plaintiff can meet h[er] burden of causation simply by showing close

enough timing between h[er] protected activity and h[er] adverse employment action.'" *Id*. (quoting *Garcia v. Pro. Cont. Servs., Inc*., 938 F.3d 236, 242-43 (5th Cir. 2019)) (internal citation omitted).

Boone cannot meet her burden of establishing a causal connection between reporting the harassment to Lechner-Barr and Dennis Harris and the purported adverse employment action (the end of her employment). While the four-month period between the two events may be sufficient to satisfy causation at the *prima facie* stage, this temporal proximity alone is not sufficient at the pretext stage.[5] Boone produces scant *evidence* of pretext and retaliation. "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013). Ultimately, in order to survive a motion for summary judgment, a plaintiff must show "a 'conflict in substantial evidence'" on the question of whether the employer would not have taken the adverse employment action but for the protected activity. *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012)) (additional citation omitted).

Here, Boone makes many conclusory arguments purporting to support her position that Kroger's actions were pretextual. She points to Kroger misplacing both parties' written statements

[5] In an attempt to shorten the temporal proximity between the protected activity and the alleged constructive discharge, Boone contends that she repeatedly engaged in protected activity during the four-month period —specifically citing her October 30 email to Winbush and Bohn and her November 6 email to Clemons-Chandler. However, Boone's argument is misplaced because those emails occurred *after* her resignation on October 28. Further on this point, while her contentions may be true, Kroger correctly cites Fifth Circuit law indicating that "in measuring temporal proximity, only the first instance of protected activity is relevant." *See Alkhawaldeh*, 851 F.3d at 428; *see also Decou-Snowton v. Jefferson Par.*, 2024 WL 4879466, at *7 (5th Cir. Nov. 25, 2024). For this reason, the temporal proximity remains four months and is nevertheless, independently insufficient at the pretext stage.

about the second physical incident, failing to describe the incident as sexual harassment to human resources, failing to preserve or produce video surveillance of the aisle, failing to notify Boone's union of the incident, misrepresenting that Boone was comfortable working with Rich, and Gatliff telling her to "lawyer up" after she disclosed that she had recorded conversations with Kroger management. It is well-established that unsubstantiated assertions are not competent summary judgment evidence and that Boone must do more to preclude summary judgment. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553. Boone has not met this burden. Despite listing out these arguments, she fails to cite actual evidence in the record, and even if her contentions were true, she fails to connect her report of sexual harassment to the ultimatum that was given to her on her final day at Kroger.

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992). Boone fails to cite any summary judgment evidence from the record, much less any evidence of causation required for a retaliation claim. This leaves the Court to make a significant inferential leap which would be improper.

Therefore, even if Boone could prove an adverse employment action by constructive discharge, the causation element would fail.

For these reasons, the Court grants summary judgment as to Boone's retaliation claim. It is dismissed.

*III. Sexual Harassment/Hostile Work Environment Claim*

Boone also brings a claim for sexual harassment/hostile work environment. Title VII makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment." *West v. City of Hou., Tex.*, 960 F.3d 736, 741 (5th Cir. 2020) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019)) (additional citation omitted). A hostile work environment consists of "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); 42 U.S.C. § 2000e-5(e)(1)). To establish a hostile work environment claim, a plaintiff must show:

> (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action."

*Id.* (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *see also Moody v. Region IV Cmty. Mental Health Comm'n*, 2022 WL 1151266, at *2 (N.D. Miss. Apr. 18, 2022) (quoting *Harvill*, 433 F.3d at 434 (additional citation omitted).

While conceding the first three elements for purposes of summary judgment, Kroger contends that Boone's claim fails as to the fourth and fifth elements, asserting that she "has shown no evidence of and cannot establish [that] the alleged harassment affected a term, condition, or privilege of her employment, nor that Kroger failed to take prompt, remedial action." [39] at p. 15. Boone contends that a reasonable jury could in fact find in her favor on those elements. The Court will address each of these issues in turn.

*i. Whether the harassment affected a term, condition, or privilege of employment*

As to the fourth element, for purported harassment to affect a term, condition, or privilege of employment, it must be sufficiently severe *or* pervasive to alter the conditions of employment and create an abusive work environment. *Id*. at 741-42 (citing *Aryain*, 534 F.3d at 479). An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element. *Harvill,* 433 F.3d at 434–35. The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. Thus, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007). "To be actionable, the challenged conduct must be both *objectively offensive*, meaning that a reasonable person would find it hostile and abusive, and *subjectively offensive*, meaning that the victim perceived it to be so." *Harvill*, 433 F.3d at 434 (5th Cir. 2005) (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)) (emphasis added).

*a. Objectively Offensive*

The totality of the employment circumstances determines whether an environment is objectively offensive. Although no single factor is determinative, pertinent considerations are:

> (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.

*West*, 960 F.3d at 741 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993)) (internal citations and quotation marks omitted).

In making this determination, the Court will address the relevant aforementioned factors which the Supreme Court and the Fifth Circuit have implemented. *Id.* To recap, Boone alleges the following: (1) that since at least the beginning of 2023, Rich commented on her breasts and/or buttocks at least once a week, (2) that later in 2023 Rich grabbed her by her arm and said, "you have no idea what I could do to you," and (3) that in 2024 after offering her $50 to help him, Rich pressured her against a shelf while touching her waist and breast and stated, "I'll pay you more than that."[6]

The Court first looks to the frequency of the harassment. As to the comments about Boone's body, she testified in her deposition that at the end of 2022 or beginning of 2023, Rich began verbally harassing her by commenting on her breasts and/or buttocks. She testified that Rich made these comments at least once a week. Taking these facts as true, the Court notes that, had these comments been made from the beginning of 2023 to mid-2023 when the harassment became physical, this could potentially total twenty-four comments over a roughly six-month period. Boone does not allege that the comments continued after the two physical incidents included in her Complaint [1].[7] Nevertheless, taking her testimony as true and even assuming the comments went on for the shortest alleged period, their frequency still weighs in Boone's favor.

In contrast, the two alleged physical incidents occurred roughly a year apart, making them much more infrequent compared to the alleged weekly verbal harassment. However, the frequency of the comments paired with the following two allegations of physical sexual harassment in 2023

[6] Boone also stated in her deposition that Derek Hill sexually harassed her in November of 2023 by kissing her thighs and trying to force her to kiss him, to which Boone continuously said "no." However, this incident is not alleged in Boone's Complaint [1] or Response Memorandum [43]. The Court therefore will not address that allegation.

[7] When testifying about her employment at Kroger following the last alleged physical encounter with Rich in 2024, Boone was asked, "Did he make any inappropriate comments to you after that?" to which she replied, "Not that I know of." [42], Ex. 1 at p. 206.

and 2024 come to a total of at least twenty-six instances in a roughly eighteen-month period. Taking all of this into account and viewing it in the light most favorable to Boone, a reasonable jury could find that the harassment, as a whole, was frequent.

A reasonable jury could also find that the harassment was severe because the two physical incidents were "physically threatening or humiliating" rather than a "mere[]…offensive utterance" and affected Boone's job performance. *West*, 960 F.3d at 741. As previously discussed, Boone testified that Rich made weekly comments about her body, particularly her breasts and buttocks. These comments, alone, are not sufficiently severe to be actionable under Title VII because the Fifth Circuit has held that being subjected to "one subjectively offensive utterance…every few days" is not actionable under Title VII when the utterances "were not severe, physically threatening, or humiliating." *Arredondo v. Schlumberger Ltd.*, 583 F. Supp. 3d 783, 799 (W.D. Tex. 2022); *see also Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (citing *Shepherd v. Comptroller of Pub. Accts. of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999)).[8] However, Rich's verbal harassment eventually escalated to two incidents of physical harassment that a jury could reasonably find to be sufficiently severe.

On one occasion, Rich grabbed Boone by her wrist and stated, "you have no idea what I could do to you" which is physically threatening behavior whether interpreted as sexual in nature or not. The Fifth Circuit has approvingly cited a Seventh Circuit decision, *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001), for the proposition that the touching of an intimate body part is "one of the most severe" kinds of sexual harassment. *Harvill*, 433 F.3d at 435–36; *see also Guadalajara v. Honeywell Int'l, Inc.*, 224 F. Supp. 3d 488, 501 (W.D. Tex. 2016). As to the second, and arguably

[8] Additionally, the severity of Rich's alleged weekly comments cannot be addressed because Boone did not elaborate or provide even a single example of their content in her deposition.

more severe incident, taking Boone's testimony as true, Rich pressured Boone up against the shelf by her waist and touched her breast, an intimate body part, while she repeatedly said "no."

As to whether this conduct is sufficiently severe to preclude summary judgment, the Fifth Circuit and district courts have reached different conclusions on the matter. For instance, several courts have held that conduct of relatively similar nature is sufficient to survive summary judgment. *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474 (5th Cir. 2002) (holding that a single touching of a sexual nature combined with a single remark which indicated sexual desire towards the plaintiff was sufficient proof of severe harassment to survive summary judgment); *McKinnis,* 189 F. App'x 307 (5th Cir. 2006) (holding supervisor's touch of employee's breast and thigh was sufficiently severe to survive summary judgment); *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209 (5th Cir. 2023) (holding that supervisor sending photo of his genitalia, asking for photo of employee's breasts, asking to touch her breasts, and weekly comments about employee's "t*** and a**" was sufficiently severe to survive summary judgment); *Burnett v. Ashley Furniture Indus.*, 836 F. Supp. 3d 699 (N.D. Miss. 2026) (holding supervisor's remark that employee's body was "flirting" with him and his touching of employee's buttocks were sufficient to constitute severe harassment to survive summary judgment). On the other hand, some cases have reached the opposite conclusion. *See Gibson v. Potter*, 264 F. App'x 397 (5th Cir. 2008) (holding that supervisor's single grab of buttocks and suggestive comment were not severe or pervasive to survive summary judgment); *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, 827-29 (5th Cir. 2009) (plaintiff's purported supervisor's "chesting up" to plaintiff's breasts, forcing plaintiff through a door ahead of her, placing his hand on her stomach and running his hand around her waist, and rubbing his pelvic region across her hips and buttocks found not severe or pervasive).

As this survey of cases indicates, the outcome is particularly fact dependent. With this in mind and using these cases as guidance, the Court finds that the alleged harassment here is somewhere on the continuum between the "one off" instances in *LaDay*, *McKinnis, Gibson, Burnett* and *Paul* and the more severe, like *Wallace*. The Court finds it critical that while the alleged harassment commenced as only verbal comments, it escalated and ultimately culminated in a particularly severe physical incident with Rich. While Rich's comments when viewed in isolation were not sufficiently severe, the progression of harassment here is significant.

Lastly, Rich's conduct also arguably unreasonably interfered with Boone's work performance as she alleges she suffered panic attacks leading to blackouts. While she suffered from anxiety prior to the incidents with Rich, it was, taking her testimony as true, exacerbated and contributed to by her fear of men.

Therefore, based on the totality of the circumstances, a reasonable jury could find that Rich's conduct was objectively offensive.

*b. Subjectively Hostile*

Boone has also presented evidence that she perceived her work environment to be hostile. She testified that she suffered panic attacks and was constantly looking over her shoulder "afraid that someone, or [Rich], would come over there to [her], because [she] was alone. There was no stopping anyone from getting to [her]." [42], Ex. 1 at p. 84. Although Boone did not report the first physical incident with Rich to management, she did tell co-workers and asked them to keep Rich away from her. Kroger attempts to rely on the fact that nothing else transpired between June, when the second incident occurred, and October, when Boone resigned, but it cites no authority to indicate that that alone negates her subjective belief that the work environment was hostile. And the Court is unaware of any such authority. Additionally, Boone claims that management became

hostile towards her after reporting the incident — citing what she perceived to be derogatory or dismissive tones and "aggressive" confrontations. [42], Ex. 1 at p. 86, 219. Further, Boone pursuing harassment complaints with Kroger and her union is sufficient evidence to allow a jury to conclude that Boone subjectively perceived her working environment to be hostile or abusive. *See Aryain*, 534 F.3d at 480.

Viewing the facts in the light most favorable to Boone, the Court finds that there is a genuine issue of material fact as to whether Rich's alleged conduct toward her was sufficiently severe or pervasive to alter the terms of her employment. Her allegations include more than just a single inappropriate comment and a sexual touching — Rich grabbed Boone by her wrist, touched an intimate area of her body, made several sexually charged comments about her body, and propositioned her money for sex.

She has come forward with sufficient evidence to preclude summary judgment as to the fourth element.

*ii. Whether "the employer knew or should have known" about the harassment and "failed to take prompt remedial action"*

The fifth element of a hostile work environment claim requires Boone to demonstrate that Kroger knew or should have known about the sexual harassment and failed to take prompt remedial action. *West*, 960 F.3d at 741. What constitutes prompt remedial action is a fact-specific inquiry and "not every response by an employer will be sufficient" to absolve the employer of liability under Title VII. *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014) (citing *Hockman*, 507 F.3d at 329). "An employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not reasonably calculated to halt the harassment. *Id*. An employer that "t[akes] the allegations seriously, "conduct[s] prompt and thorough investigations," and "immediately implement[s] remedial and disciplinary measures

based on the results of such investigations" satisfies this prong. *Brenyah v. Columbia Hosp. Corp. of Bay Area*, 181 F.4th 609, 627 (5th Cir. 2026) (citing *Hudson v. Lincare, Inc.*, 58 F.4th 222, 230 (5th Cir. 2023)).

Here, Boone admittedly did not make Kroger management privy to the alleged sexual comments Rich made about her body. Nor did she apprise Kroger management of the first physical incident with Rich where he grabbed her wrist and stated, "you have no idea what I could do to you." [42], Ex. 1 at p. 19, 64. However, it is undisputed that Kroger knew about the June 2024 incident with Rich because Boone reported it to Dawn Lechner-Barr, the store manager, and Dennis Harris, her supervisor, the night of the incident. Whether Kroger took prompt remedial action is at issue.

Boone contends that Kroger failed to take prompt remedial action in two distinct ways. The first way is by failing to promptly and/or thoroughly investigate Boone's claim. Kroger does not dispute that Lechner-Barr failed to notify the union of Boone's complaint. Kroger claims Lechner-Barr investigated the situation by taking statements from Boone and Rich, advising them of the sexual harassment policy and involving Human Resources. However, Boone has come forward with evidence that Human Resources did not conduct a formal investigation of sexual harassment until November 2024 — four months after the alleged harassment. Further, the November investigation report did not include Derek Hill's statement in which he states that Rich "has done this before with [Boone] and we both have told him to stop." [42], Ex. 4 at p. 1; [42]; [38], Ex. 26 at p. 2-4. Lastly, there are inconsistencies as to whether potential video footage that could have caught Boone's reaction to the incident existed or was reviewed. Taking Boone's allegations as true, the Court agrees that a reasonable jury could find that Kroger's actions as to the investigation are not reflective of an employer who acted promptly nor investigated thoroughly.

Second, Boone also argues that Kroger failed to take prompt remedial action by keeping Boone and Rich on the same shift. Kroger, on the other hand, argues that it took prompt remedial action by telling Rich to stay away from and not talk to Boone because there was no further harassment. In its Reply [45], Kroger quotes a decision from the District Court for the Southern District of Mississippi, which in turn quotes a Fifth Circuit decision, for the proposition that, "in determining whether the employer's actions were remedial, [the Fifth Circuit] has considered whether the offending behavior in fact ceased." *Williams v. Mistras Grp., Inc.*, No. 3:11CV128-DPJ-FKB, 2012 WL 692420, at *3 (S.D. Miss. Mar. 2, 2012) (quoting *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999)). It is undisputed that there were no further allegations of sexual harassment between Boone and Rich following the June 2024 incident. Kroger uses this to bolster its position that the measures it took were in fact remedial. But, in the Court's view, that, to some extent, mischaracterizes the applicable standard.

In *Skidmore*, when notified of the harassment, the employer instructed the harasser to leave the victim alone and no longer scheduled the victim to work the same shift as him. *Skidmore*, 188 F.3d at 611. Thereafter, the harasser never touched or spoke to the victim again. *Id*. Nevertheless, the victim alleged that she continued to feel uncomfortable at work because the harasser "leered" at her and was present in common work areas, and employees began to ostracize her after learning of her allegations. *Id.* She further testified to severe mental suffering as a result of the harassment, was diagnosed with post-traumatic stress disorder, and was recommended at least a year of psychiatric treatment. *Id*. at 612. The *Skidmore* court held that the employer's response "constitute[d] 'prompt remedial action' as a matter of law" because the harasser's "conduct ceased in its offensive nature," despite the fact that no investigation was made until after the EEOC

complaint was filed months later, the harasser was never reprimanded, and no follow-up inquiry was made to determine whether the harassment had ended. *Id*. at 616.

The Court recognizes the similarities between the present case and *Skidmore* but finds that a material distinction prevents *Skidmore* from controlling here. As in *Skidmore*, when Kroger first learned of the alleged harassment, it instructed Rich to stay away from Boone and to speak with her only about work if necessary. Unlike *Skidmore*, however, Kroger continued to schedule Boone and Rich on the same shift. And, as noted previously, Boone testified that she did continue to see Rich on occasion:

> Q: As we talked about, Rodrick and you didn't even have any interactions after this, correct?
>
> A: We still had to go to the same back room, and we would pass each other. Yes.

[42], Ex. 1 at p. 206.

Further, Boone testified in her deposition that she requested to be transferred to the day shift or another department but that her requests were denied. Specifically, she testified:

> Q: Okay. Now, the first one you said you tried to move shifts?
>
> A: Yes.
>
> Q: And what were you trying to move?
>
> A: I was trying to go to day shift or a different department.
>
> Q: Okay. And did you – how did you ask for that?
>
> A: I asked the store manager, Dawn Barr, specifically.

[42], Ex. 1 at p. 117.

This differs significantly from *Skidmore* because there, the employer immediately took the victim off the same shift as the alleged harasser. Conversely, Boone was kept on the same shift as

Rich, even after specifically requesting to be taken off that shift. Indeed, Boone testified that after the June 2024 incident, she and Rich still had to enter the same back room and pass one another. Thus, the parties continued to have some level of workplace interaction. The record does not establish how frequently Boone and Rich encountered one another in the back room, whether they worked near one another despite being separated, or the extent of any other interactions. Accordingly, although the end of the alleged harassment is relevant, the extent and effectiveness of Kroger's remedial measures present genuine issues of material fact that are better resolved by a jury.

There are also genuine disputes of fact as to whether Rich was ever suspended or reprimanded. Lechner-Barr testified that, aside from requiring Rich to re-sign the sexual harassment policy, Kroger never reprimanded him for the alleged harassment and merely instructed him to stay away from Boone and speak to her only about work if necessary. Kroger's EEOC statement similarly indicates that Rich returned to work immediately. Rich, however, testified that he was suspended for four days and given a written reprimand.

This distinction is significant in light of *Tucker v. United Parcel Serv. Inc.*, 734 F. App'x 937 (5th Cir. 2018). There, the Fifth Circuit held that UPS took prompt remedial action as a matter of law where it immediately suspended the alleged assailant pending an investigation and, after the investigation, moved the victim to a separate work area, instructed the harasser not to enter that area, counseled him on its sexual-harassment and professionalism policies, and provided the victim with an escort. The harassment then ceased. *Id*. at 942-43.

The measures in *Tucker* are materially different from the evidence currently before this Court. Although Kroger claims and Boone concedes that she and Rich were separated, the record does not establish what the separation entailed. Boone testified that she and Rich continued to pass

each other and use the same back room. Moreover, unlike in *Tucker*, there is a factual dispute as to whether Rich was suspended or reprimanded at all. Finally, Kroger did not conduct its investigation until November 2024, *after Boone had already resigned*.

Thus, while the fact that the alleged harassment stopped is relevant, it is not dispositive. The adequacy and promptness of Kroger's response, including whether Rich was suspended or reprimanded and the extent to which Boone and Rich remained in contact, present genuine disputes of material fact. A reasonable jury could find that Kroger's actions fell short of prompt remedial measures.

*iii. Whether Kroger is entitled to the Faragher/Ellerth affirmative defense*

Kroger contends it is entitled to the *Faragher/Ellerth* affirmative defense because the alleged harassment did not result in a negative tangible employment action. In *Faragher* and *Ellerth*, the Supreme Court outlined a road map for imposing vicarious liability on an employer when a supervisory employee is accused of sexual harassment. *See generally Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). However, when the harasser is a co-worker rather than a supervisory employee, the plaintiff must show that the employer "knew or should have known about the harassment in question and failed to take prompt remedial action." *Pullen v. Caddo Par. Sch. Bd.*, 830 F.3d 205, 213 (5th Cir. 2016). As previously mentioned, it is undisputed that Kroger knew of the harassment in question and for the aforementioned reasons, the Court finds a reasonable jury could find that Kroger did not take prompt remedial measures.

Therefore, summary judgment is denied as it pertains to the hostile work environment claim.

*Conclusion*

For the reasons set forth herein, Kroger's Motion for Summary Judgment [38] is GRANTED IN PART AND DENIED IN PART. Boone's sex discrimination and retaliation claims are DISMISSED with prejudice. She will be permitted to proceed to trial on her hostile work environment claim.

SO ORDERED, this the 21st day of October, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE